CR 26-186 ECT/DTS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

(1) KU KELVIN VUE, and
(2) TRAVIS VUE,

Defendants.

**INDICTMENT**

26 U.S.C. § 7202
26 U.S.C. § 7203
26 U.S.C. § 7206(1)
18 U.S.C. § 1349

THE UNITED STATES GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

1. Defendant KU KELVIN VUE was a resident of Rogers, Minnesota and/or Gore, Oklahoma.

2. Defendant TRAVIS VUE was a resident of Rogers, Minnesota.

3. In or around August 2005, KU KELVIN VUE incorporated UniSelect Services, Inc. ("UniSelect"). UniSelect was a corporation doing business in Rogers, Minnesota and elsewhere. Uniselect was a temporary staffing agency that provided temporary workers to client companies in the manufacturing industry and other industries.

4. KU KELVIN VUE was the owner and president of UniSelect.



SCANNED
OCT 15 2026
U.S. DISTRICT COURT MPLS

5. TRAVIS VUE was the son of KU KELVIN VUE and an employee of UniSelect. As early as 2014, TRAVIS VUE had supervisory authority over many of UniSelect's operations.

6. UniSelect entered into contracts with several clients agreeing that the temporary workers UniSelect provided were employees of UniSelect, not the clients. Each contract provided that UniSelect, not the client, was responsible for paying the temporary workers, withholding and transmitting employment taxes on behalf of the temporary workers, making unemployment contributions on behalf of the temporary workers, maintaining applicable insurance coverage covering all temporary workers, and responding to claims for unemployment and workers' compensation proceedings involving the temporary workers. KU KELVIN VUE signed each contract as president of UniSelect.

7. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for enforcing and administering the tax laws of the United States.

8. A U.S. Individual Income Tax Return, Form 1040 ("Form 1040) was a tax return filed with the IRS wherein a taxpayer reported, among other items, the taxpayer's income, deductions and credits, and the amount of tax owed or tax refund claimed.

## Employment Tax Withholding

9. Pursuant to the Internal Revenue Code and associated statutes and regulations, employers were required to withhold amounts from their employees'

gross pay including Federal Insurance Contribution Act ("FICA") taxes, which represent Social Security and Medicare taxes, and federal income taxes. These taxes will be referred to in this Indictment collectively as "trust fund taxes" because employers held the withheld amounts in trust until paid over to the United States. Employers were required to remit these withheld, trust fund amounts to the IRS on a quarterly basis, no later than the last day of month following the end of the quarter.

10. In addition to the trust fund taxes withheld from employees' pay, employers were separately required to make contributions under FICA for Social Security and Medicare matching the amounts withheld from their employees' pay for those purposes. Such employer contributions were likewise required to be remitted to the IRS on a quarterly basis, no later than the last day of the month following the end of each quarter. Collectively, these five components required to be remitted quarterly were commonly referred to as "employment taxes," made up of the trust fund taxes withheld (individual, Social Security, and Medicare), and the matching amounts contributed by the employer (Social Security and Medicare).

11. An Employer's Quarterly Federal Tax Return, IRS Form 941 ("Form 941"), was used by employers to report income taxes, Social Security tax, and Medicare tax withheld from employees' paychecks. Employers were required to file a Form 941 one month after the conclusion of the calendar quarter.

12. A person was responsible for collecting, accounting for, and paying over employment taxes if he or she had the authority required to exercise significant control over the employer's financial affairs, regardless of whether the individual

exercised such control in fact. More than one person may be considered a "responsible person" for the purpose of collection, accounting for, and paying over employment taxes, including trust fund amounts and employers' matching amounts.

## Willful Failure to Collect, Account For, and Pay Over Taxes

13. As the owner and president of UniSelect, KU KELVIN VUE exercised significant control and authority over UniSelect's finances by, among other acts, controlling the business bank account, maintaining signature authority on the business bank account, directing payments, negotiating and signing contracts, and setting employee pay rates. Thus, KU KELVIN VUE was a responsible person for collecting trust fund taxes, accounting for the employment taxes by filing Forms 941 with the IRS, and paying over to the IRS the employment taxes for UniSelect's employees.

14. TRAVIS VUE also exercised significant control and authority over UniSelect's finances by, among other acts, causing employees to be paid, causing checks to be issued for business expenses, depositing business checks, operating payroll, and managing UniSelect's books and records. Thus, TRAVIS VUE was also a person responsible for collecting trust fund taxes, accounting for employment taxes by filing Forms 941 with the IRS, and paying over to the IRS the trust fund taxes for UniSelect's employees.

15. From in or around 2016 through in or around 2022, UniSelect employed approximately 75 to 215 employees each year. In total, UniSelect employed

approximately 600 individuals during this time period. UniSelect collectively paid more than $4.9 million in wages to its employees during this period.

16. Despite UniSelect paying millions of dollars in wages to its employees during this period, KU KELVIN VUE and TRAVIS VUE failed to withhold from the pay of UniSelect's employees or pay over to the IRS any trust fund taxes, and failed to file any Forms 941 on behalf of UniSelect.

## COUNTS 1-8

(Willful Failure to Collect, Account For, and Pay Over Employment Tax)

17. Paragraphs 1-16 are incorporated by reference as if fully set forth herein.

18. On or about the dates listed below, for each of the calendar quarters listed below, in the District of Minnesota and elsewhere, the defendants

**KU KELVIN VUE and
TRAVIS VUE**

did willfully fail to collect, truthfully account for and pay over to the IRS all of the trust fund taxes due and owing to the IRS on behalf of the employees of UniSelect.

| Count | Calendar Quarter | Due Date of Form 941 | Approximate Trust Fund Taxes Due and Owing |
|---|---|---|---|
| 1 | 2020 Quarter 3 | October 31, 2020 | $14,229 |
| 2 | 2020 Quarter 4 | January 31, 2021 | $13,304 |
| 3 | 2021 Quarter 1 | April 30, 2021 | $12,739 |
| 4 | 2021 Quarter 2 | July 31, 2021 | $14,226 |
| 5 | 2021 Quarter 3 | October 31, 2021 | $11,601 |

| | | | |
|---|---|---|---|
| 6 | 2021 Quarter 4 | January 31, 2022 | $15,641 |
| 7 | 2022 Quarter 1 | April 30, 2022 | $11,734 |
| 8 | 2022 Quarter 2 | July 31, 2022 | $12,638 |

All in violation of Title 26, United States Code, Section 7202.

**COUNTS 9-11**
(Willful Failure to File a Corporate Tax Return)

19. Paragraphs 1, 3-4, and 7 are incorporated by reference as if fully set forth herein.

20. UniSelect was a C corporation. Under the Internal Revenue Code, the profits of a C corporation were taxed separately from its shareholders.

21. Under the laws of the United States, every C corporation was required to make and annually file a U.S. Corporation Income Tax Return, Form 1120 ("Form 1120"), reporting, among other items, the total income and the total deductions of the corporation. These figures were used, among other purposes, to calculate the corporation's taxable income.

22. Generally, a C corporation was required to file Forms 1120 on or before the fifteenth day of the fourth month after the end of the corporation's tax year.

23. As the owner and president of UniSelect, KU KELVIN VUE was required to timely file Forms 1120 on behalf of UniSelect and to cause payments to be made to the IRS for any income taxes due.

24. KU KELVIN VUE failed to file any Forms 1120 or make any income tax payments on behalf of UniSelect for calendar years 2005 through 2022.

25. During the calendar years listed below, the defendant

**KU KELVIN VUE**

was the owner and president of UniSelect, a corporation not expressly exempt from tax, with its principal place of business at Rogers, Minnesota. He therefore was required by law, after the close of the following calendar years and on or before the approximate dates listed below, to make an income tax return, for and on behalf of UniSelect, to the IRS, stating specifically the items of the corporation's gross income and the deductions and credits allowed by law. Knowing and believing all of the foregoing, he did willfully fail, on or about the dates listed below, in the District of Minnesota and elsewhere, to make an income tax return at the time required by law.

| Count | Calendar Year | Approximate Tax Return Due Date |
|---|---|---|
| 9 | 2020 | April 15, 2021 |
| 10 | 2021 | April 15, 2022 |
| 11 | 2022 | April 15, 2023 |

All in violation of Title 26, United States Code, Section 7203.

**COUNT 12**
(Making and Subscribing a False Tax Return)

26. Paragraphs 2, 7, and 8 are incorporated by reference as if fully set forth herein.

27. On or about the date listed below, in the District of Minnesota and elsewhere, the defendant

**TRAVIS VUE**

willfully made and subscribed, and filed and caused to be filed with the IRS, a false U.S. Individual Income Tax Return, Form 1040, for the calendar year listed below, which was verified by a written declaration that it was made under the penalties of perjury and which TRAVIS VUE did not believe to be true and correct as to every material matter. The income tax return reported false wages, ordinary dividends, total income, and taxable income, whereas TRAVIS VUE knew he had received substantially greater wages, ordinary dividends, total income, and taxable income.

| Count | Approximate Date of Filing | Year | False Items |
|---|---|---|---|
| 12 | March 21, 2021 | 2020 | a. Line 1: Wages – $0<br>b. Line 3b: Ordinary dividends – $0<br>c. Line 9: Total income – $0<br>d. Line 15: Taxable income – $0 |

All in violation of Title 26, United States Code, Section 7206(1).

## COUNTS 13-15
(Willful Failure to File an Individual Tax Return)

28. Paragraphs 2, 7, and 8 are incorporated by reference as if fully set forth herein.

29. During the calendar years listed below, in the District of Minnesota and elsewhere, the defendant

**TRAVIS VUE**

had and received gross income in excess of the amounts listed in the table below. By reason of such gross income, he was required by law, following the close of the calendar years listed below, and on or before the due dates listed below, to make

an income tax return to the IRS, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Knowing and believing all of the foregoing, he did willfully fail, on or about the dates listed below, in the District of Minnesota, to make an income tax return.

| Count | Calendar Year | Gross Income Filing Requirement | Approximate Tax Return Due Date |
|---|---|---|---|
| 13 | 2021 | $12,550 | October 17, 2022 |
| 14 | 2022 | $12,950 | October 16, 2023 |
| 15 | 2023 | $13,850 | October 15, 2024 |

All in violation of Title 26, United States Code, Section 7203.

**COUNT 16**
(Conspiracy to Commit Wire Fraud)

30. Paragraphs 1-6 are incorporated by reference as if fully set forth herein.

31. Beginning in or about May 2014 and continuing until in or about August 2022, in the State and District of Minnesota, and elsewhere, the defendants

**KU KELVIN VUE and
TRAVIS VUE**

did knowingly and wrongfully conspire, combine, confederate, and agree with each other, and others unknown to the grand jury, to execute and attempt to execute a scheme and artifice to defraud clients of UniSelect by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1349.

## OVERVIEW AND PURPOSE OF THE CONSPIRACY

32. The purpose of the conspiracy was to secure business for UniSelect by falsely assuring clients that UniSelect maintained active workers' compensation insurance coverage for all UniSelect employees it provided to clients as temporary workers. Workers' compensation insurance was a type of business insurance that paid for medical care and lost wages if an employee were injured or became sick on the job. In spite of contractual promises UniSelect made to Clients A, B, C, and D, KU KELVIN VUE and TRAVIS VUE did not maintain applicable workers' compensation insurance coverage on behalf of UniSelect's employees that it supplied to clients as temporary workers. KU KELVIN VUE and TRAVIS VUE instead created false and fraudulent workers' compensation insurance policy certificates, which they then transmitted to clients using interstate wires in order to retain their business by deceiving them into believing UniSelect maintained workers' compensation insurance policies.

## MANNER AND MEANS OF THE CONSPIRACY

33. KU KELVIN VUE and TRAVIS VUE sought to accomplish the objects of the conspiracy through the following manner and means, among others:

34. Entering into contracts with clients that included an agreement that UniSelect would maintain workers' compensation insurance coverage for all employees UniSelect provided to clients as temporary workers.

35. Creating false and fraudulent workers' compensation insurance policy certificate, purportedly issued by a Minnesota insurance agency, listing UniSelect clients as the certificate holders.

36. Providing or causing to provide to clients, via the use of wires, certificates of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to clients as temporary workers, even though it did not have such an insurance policy.

37. Receiving checks from clients of UniSelect as compensation for work performed by the temporary workers assigned to the clients, and then depositing those checks into UniSelect's business bank account.

38. On or about May 27, 2014, KU KELVIN VUE entered into a contract with Client A agreeing that UniSelect would maintain workers' compensation insurance coverage for all employees UniSelect provided to Client A as temporary workers.

39. On or about June 17, 2020, the owner and chief executive officer of Client A emailed KU KELVIN VUE requesting a copy of UniSelect's workers' compensation insurance policy certificate.

40. On or about June 17, 2020, after receiving the request from Client A for a copy of UniSelect's workers' compensation insurance policy certificate, KU KELVIN VUE sent a text message to TRAVIS VUE directing him to "update the workers' comp

and send a copy to [Client A]." KU KELVIN VUE sent another text message to TRAVIS VUE further directing: "Issue date: 6/17/2020."

41. On or about June 17, 2020, TRAVIS VUE created or caused to be created a false and fraudulent workers' compensation insurance policy certificate, purportedly issued by a Minnesota insurance agency, listing Client A as the certificate holder and June 17, 2020 as the issue date. He then sent a text message to KU KELVIN VUE that included a photograph of the false and fraudulent worker's compensation insurance policy certificate.

42. On or about June 19, 2020, KU KELVIN VUE and TRAVIS VUE provided or caused to be provided to Client A via fax a certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client A as temporary workers, even though it did not have such an insurance policy.

43. On or about June 20, 2020, Client A issued a check to UniSelect for $20,876.12 as compensation for work performed by UniSelect employees assigned to Client A as temporary workers. The check was deposited into UniSelect's business bank account.

44. On or about April 14, 2022, a representative of Client A emailed KU KELVIN VUE requesting a current copy of UniSelect's workers' compensation insurance policy certificate.

45. After receiving no response, on or about April 20, 2022, a representative of Client A emailed KU KELVIN VUE requesting for a second time a current copy of UniSelect's workers' compensation insurance policy certificate.

46. In response to Client A's request, on or about April 20, 2022, KU KELVIN VUE provided or caused to be provided to Client A via email an updated certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client A as temporary workers, even though it did not have such an insurance policy.

47. On or about August 11, 2015, KU KELVIN VUE entered into a contract with Client B agreeing that UniSelect would maintain workers' compensation insurance coverage for all temporary employees UniSelect provided to Client B.

48. On or about February 18, 2016, KU KELVIN VUE and TRAVIS VUE provided or caused to be provided to Client B a certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client B as temporary workers, even though it did not have such an insurance policy.

49. On or about January 3, 2019, Client B issued a check to UniSelect for $3,996.40 as compensation for work performed by UniSelect employees assigned to Client B as temporary workers. The check was deposited into UniSelect's business bank account.

50. On or about February 7, 2020, KU KELVIN VUE and TRAVIS VUE provided or caused to be provided to Client C a certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client C as temporary workers, even though it did not have such an insurance policy.

51. On or about February 19, 2020, Client C issued a check to UniSelect for $4,345.25 as compensation for work performed by UniSelect employees assigned to Client C as temporary workers. The check was deposited into UniSelect's business bank account.

52. On or about May 6, 2021, KU KELVIN VUE and TRAVIS VUE provided or caused to be provided to Client C an updated certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client C as temporary workers, even though it did not have such an insurance policy.

53. On or about February 24, 2022, KU KELVIN VUE directed TRAVIS VUE via text message to "update the worker's comp certificate and fax to [Client C]."

54. On or about February 24, 2022, TRAVIS VUE created or caused to be created a false and fraudulent workers' compensation insurance policy certificate, purportedly issued by a Minnesota insurance agency, listing Client C as the certificate holder and February 24, 2022 as the date of issuance. TRAVIS VUE then sent a sent a text message to KU KELVIN VUE that included a photograph of the false and fraudulent worker's compensation insurance policy certificate.

55. On or about February 24, 2022, KU KELVIN VUE and TRAVIS VUE provided or caused to be provided to Client C via fax an updated certificate of insurance falsely and fraudulently representing that UniSelect had a valid workers' compensation insurance policy for UniSelect employees who were assigned to Client C as temporary workers, even though it did not have such an insurance policy.

56. On or about June 10, 2016, KU KELVIN VUE entered into a contract with Client D agreeing that UniSelect would maintain workers' compensation insurance coverage for all temporary employees UniSelect provided to Client D.

57. Having relied on KU KELVIN VUE and TRAVIS VUE's false and fraudulent representations that UniSelect had valid workers' compensation insurance policies for UniSelect employees who were assigned to Client A as temporary workers, Client A continued to transact business with UniSelect by utilizing temporary workers provided by UniSelect in exchange for fees transmitted by check.

58. During the years 2007 through 2022, Client A paid UniSelect a total of more than $4.8 million in exchange for the use of UniSelect employees provided to Client A as temporary workers.

59. Having relied on KU KELVIN VUE and TRAVIS VUE's false and fraudulent representations that UniSelect had valid workers' compensation insurance policies for UniSelect employees who were assigned to Client B as temporary workers, Client B continued to transact business with UniSelect by

utilizing temporary workers provided by UniSelect in exchange for fees transmitted by check.

60. During the years 2016 through 2019, Client B paid UniSelect a total of more than $360,000 in exchange for the use of UniSelect employees provided to Client B as temporary workers.

61. Having relied on KU KELVIN VUE and TRAVIS VUE's false and fraudulent representations that UniSelect had valid workers' compensation insurance policies for UniSelect employees who were assigned to Client C as temporary workers, Client C continued to transact business with UniSelect by utilizing temporary workers provided by UniSelect in exchange for fees transmitted by check.

62. During the years 2016 through 2020, Client C paid UniSelect a total of more than $1 million in exchange for the use of UniSelect employees provided to Client C as temporary workers.

63. Having relied on KU KELVIN VUE and TRAVIS VUE's false and fraudulent representations that UniSelect had valid workers' compensation insurance policies for UniSelect employees who were assigned to Client D as temporary workers, Client D continued to transact business with UniSelect by utilizing temporary workers provided by UniSelect in exchange for fees transmitted by check.

64. During the years 2016 through 2017, Client D paid UniSelect a total of more than $65,000 in exchange for the use of UniSelect employees provided to Client D as temporary workers.

All in violation of Title 18, United States Code, Section 1349.

A TRUE BILL

UNITED STATES ATTORNEY

FOREPERSON